Cheryl SCHRADER, et al., Appellants,

v.

QUIKTRIP CORPORATION,
Respondent,

and

Missouri Department of
Transportation,
Defendant.

No. ED 92171.

Missouri Court of Appeals,
Eastern District,
Division One.

July 28, 2009.

*Company,* 861 S.W.2d 686, 689 (Mo.App. 1993).

Patricia A. Wilcox, St. Louis, MO, for appellants.

David L. Antognoli, Edwardsville, IL, for respondent.

## OPINION

GLENN A. NORTON, Judge.

Cheryl Schrader and Time–Out Sports Bar & Grill, Inc.[1] appeal the order dismissing their negligent misrepresentation claim against QuikTrip Corporation. Plaintiffs also appeal the judgment granting summary judgment in favor of QuikTrip on their claims for interference with an easement and trespass. We affirm in part and dismiss in part.

---

1. For purposes of appeal, Schrader and Time–Out will be collectively referred to as "Plaintiffs."

## I. BACKGROUND

Plaintiff Cheryl Schrader is the owner of the real property located at 4140 Gravois Avenue in St. Louis, Missouri. Plaintiff Time–Out leases the property and operates a restaurant and bar situated thereon. The property lacks any access for vehicular traffic by means of a driveway or off-street parking. Customers desiring to enter Time–Out do so via the pedestrian sidewalk and the door that fronts Gravois. Throughout the first three years of Time–Out's operation, Gravois was a four-lane roadway with a parking lane provided on both sides. As a result of this configuration, the spaces in the parking lane, although never exclusively reserved for Time–Out, were often utilized by Time–Out patrons as a convenient place to park.

Defendant QuikTrip Corporation is an Oklahoma corporation that operates convenience stores in multiple locations throughout St. Louis. In 2006, QuikTrip purchased a parcel of land located across Gravois from Time–Out with the intention of opening a new location. In order to better facilitate traffic turning into the proposed convenience store, QuikTrip requested permission from the Missouri Department of Transportation ("MoDOT") to re-stripe the roadway and create a center-turn lane.[2] Ultimately, MoDOT approved this change and Gravois became a five-lane roadway with no parking lanes. Plaintiffs claim they did not become aware of the impending change until crews arrived in March of 2007 to begin work. Plaintiffs made requests to both MoDOT and Quik-Trip to halt the re-striping, but both requests were denied. Following these denials, Plaintiffs filed suit against MoDOT and QuikTrip on October 5, 2007. Plaintiffs' petition asserted six counts.[3] Against QuikTrip, Plaintiffs asserted the following claims: interference with an easement (Count IV), trespass (Count V), and negligent misrepresentation (Count VI).

Subsequently, QuikTrip filed a motion to dismiss Plaintiffs' negligent misrepresentation claim (Count VI). The motion was granted and the claim was dismissed by order of the court on January 16, 2008.

Thereafter, QuikTrip filed a motion for summary judgment on the remaining interference with an easement and trespass claims (Counts IV & V). On September 22, 2008, the court granted QuikTrip's motion for summary judgment on those claims, making a specific determination that there was "no just reason for undue delay."[4] Plaintiffs filed the instant appeal, challenging both the January 16 order and the September 22 judgment.

## II. DISCUSSION

### A. The Trial Court's Order Dismissing Plaintiffs' Negligent Misrepresentation Claim was not Preserved for Appeal

 In their first point on appeal, Plaintiffs contend that the trial court erred by

---

**2.** MoDOT is a state-owned entity that entered into a maintenance contract with the City of St. Louis on January 9, 2004, to repair and maintain certain specified streets, including Gravois Avenue.

**3.** Against MoDOT, Plaintiffs asserted three claims: inverse condemnation (Count I), violation of due process rights (Count II), and violation of equal protection rights (Count III). Counts I, II and III are not at issue in this appeal.

**4.** See Bell Scott, LLC v. Wood, Wood, and Wood Investments, Inc., 169 S.W.3d 552, 554 (Mo.App. E.D.2005) (stating that "a judgment as to one or more but fewer than all of the claims may be certified for appeal if the trial court expressly designates under Rule 74.01(b) that there is no just reason for delay"); see also Missouri Supreme Court Rule 74.01(b) (2009).

entering an order dismissing their negligent misrepresentation claim. We are unable to review this point because it was not preserved for appeal. In their notice of appeal, Plaintiffs refer only to the entry of summary judgment dated September 22, 2008, which disposed of their claims for interference with an easement and trespass. Since the notice of appeal must specify the judgment or order appealed from, this court is confined to a review of the entry of summary judgment only. Rule 81.08(a) [5]; *see also Erickson v. Pulitzer Publishing Co.*, 797 S.W.2d 853, 858 (Mo.App. E.D.1990) (holding that where the notice of appeal referred only to the entry of summary judgment and did not mention a prior dismissal order, the court was confined to a review of summary judgment). Point one is dismissed.

## B. The Trial Court did not Err in Granting Summary Judgment in Favor of QuikTrip on Plaintiffs' Claims for Interference with an Easement and Trespass

### 1. Standard of Review

In their remaining points on appeal, Plaintiffs claim that the trial court erred in granting summary judgment in favor of QuikTrip on their claims for interference with an easement and trespass. Our review of summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record and construe all inferences in the light most favorable to the party against whom judgment was entered. *Id.* The granting of summary judgment will be upheld on appeal if there exists no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 377.

### 2. Plaintiffs are not Entitled to Recover on their Interference with an Easement Claim because Access to Their Property was Never Denied

In their second point on appeal, Plaintiffs argue that the trial court erred in granting summary judgment in favor of QuikTrip on their interference with an easement claim because Plaintiffs "possessed a property right and/or easement as an abutting property owner that was interfered with by [QuikTrip]." More specifically, Plaintiffs argue that QuikTrip's actions that caused Gravois to be re-striped constituted interference with an easement. We disagree.

### i. Applicable Easement Law

The rights of a property owner abutting a public street are governed by the common law principle of an abutter's easement of access. *Dulany v. Missouri Pacific Railroad Co.*, 766 S.W.2d 645, 648 (Mo.App. W.D.1988). An abutter's easement of access grants a property owner the right to use the adjoining street, and a property owner cannot be deprived of that right without just compensation. *Rude v. City of St. Louis*, 93 Mo. 408, 6 S.W. 257, 258 (1887). However, an abutter's easement is limited in that it only gives the owner one privilege distinct from every other citizen: a right of access to and from the street. *Kansas City v. Berkshire Lumber Co.*, 393 S.W.2d 470, 473–74 (Mo. 1965). Moreover, only if access to and from the street is either unreasonably or unlawfully obstructed may the abutter recover from the party causing such obstruction. *Rude*, 6 S.W. at 258.

### ii. Plaintiffs did not Establish a Right to Compensation under an Abutter's Easement of Access

When analyzing a claim based on violation of an abutter's easement, the determinative question is whether access to

---

5. All references to Rules are to Missouri Supreme Court Rules (2009).

the property has in fact been denied. *See State v. Meier*, 388 S.W.2d 855, 857 (Mo. banc 1965). "Access" refers to the "right of ingress and egress to and from [the] property and the abutting public highway." *Id.* Plaintiffs argue that access to Time–Out was unreasonably obstructed by Quik-Trip when the parking lanes were eliminated on Gravois. However, this is not the case. Plaintiffs have never enjoyed access to the property via Gravois. Access to Time–Out has always been obtained by pedestrian traffic entering through the front door from the sidewalk along Gravois. Removing the parking lane had no effect on patrons' ability to enter the establishment. Therefore, the re-striping of Gravois, although potentially injurious to Plaintiffs, is not actionable because the record does not support a showing that access was "either destroyed or substantially impaired." *Missouri Real Estate & Insurance Agency, Inc. v. St. Louis Co.*, 959 S.W.2d 847, 850 (Mo.App. E.D.1997). Undoubtedly, the loss of parking as a result of the removal of those spaces immediately in front of the bar had some adverse effect upon business. But, such losses are merely incidental injuries suffered as a result of the City of St. Louis exercising its police power in maintaining its roadways. *State ex rel. State Highway Commission v. Brockfeld*, 388 S.W.2d 862, 865 (Mo. banc 1965); *see also Meier, supra.*

It is well-established that public improvements to the roadway are necessary occasions where landowners must stand the loss so long as their access rights are "not materially altered or destroyed." [6] *Filger v. State Highway Commission*, 355 S.W.2d 425, 430 (Mo.App. W.D.1962). Here, the parking lanes were situated on Gravois for the convenience of the general

public. As Plaintiffs acknowledge, they did not at the time of the re-striping, nor at any time preceding, possess the power to exclude or remove any member of the public-at-large from parking in those lanes. By re-striping and altering the lane configuration, QuikTrip's actions served only to disturb the regular traffic pattern in front of Time–Out and such a disturbance is noncompensable. *Meier*, 388 S.W.2d at 857.

Plaintiffs look to the court's decision in *Dulany v. Missouri Pacific Railroad Co.* to support their contention that they were denied access. 766 S.W.2d 645. However, two key differences make the present case distinguishable from *Dulany*. First, in *Dulany*, the State constructed a guardrail that completely denied both ingress and egress from the property's private road to the adjoining public road. *Id.* at 649. Here, Plaintiffs never had a driveway or curb cut into Gravois and the re-striping did not restrict access to their property. Both before and after the installation of the center-turn lane, Plaintiffs' access and right to use Gravois remained the same as the general public. Secondly, the *Dulany* court found the injury to be unique because the guardrail only eliminated access for the Dulanys. *Id.* Here, the loss of parking as a result from the re-striping of Gravois was not unique to Plaintiffs. All persons and businesses situated along that same stretch of road were impacted similarly by the loss of the spaces. Thus, we find *Dulany* to be inapplicable here.

### iii. Conclusion Regarding the Plaintiffs' Interference with an Easement Claim

■ Plaintiffs ask this Court to equate the right of vehicular access onto their

---

6. In fact, "[w]hat makes street frontage valuable is the fact that people travel over the street, and the abutter cannot complain of improvements that facilitate such travel. He must anticipate that such improvements will be made, and that changes in the mode of travel will occur." *Berkshire Lumber*, 393 S.W.2d at 475 (internal quotations omitted).

property with the elimination of parking along a public thoroughfare in order to uphold their claim for damages. We decline to do so. The re-striping of Gravois has not infringed upon the access rights of Plaintiffs. The abutter's easement was created to protect the right of ingress and egress, not to compensate abutting property owners for alterations made to a public roadway that reduces parking, traffic, or visibility.[7] Therefore, the trial court did not err in granting summary judgment in favor of QuikTrip on Plaintiffs' interference with an easement claim. Point two is denied.

### 3. Plaintiffs are not Entitled to Recover for Trespass because they did not Establish a Right to Exclusive Possession

In their third point on appeal, Plaintiffs argue that the trial court erred in granting summary judgment in favor of QuikTrip on their trespass claim. We find that Plaintiffs' claim that QuikTrip committed trespass when MoDOT's crew entered Gravois to perform the re-striping is without merit.

Trespass is the unauthorized entry upon the land of another. *Ogg v. Mediacom, L.L.C.*, 142 S.W.3d 801, 807 (Mo.App. W.D.2004). However, even if Plaintiffs were able to show that they held an easement to the parking lane on Gravois QuikTrip's activities would not support a claim of trespass because an easement is a non-possessory interest in land. *Beetschen v. Shell Pipe Line Corp.*, 363

Mo. 751, 253 S.W.2d 785, 786 (1952). A party asserting a claim of trespass "must prove the intrusion interfered with their actual possession, their right of exclusive possession." *Maryland Heights Leasing, Inc. v. Mallinckrodt*, 706 S.W.2d 218, 225–26 (Mo.App. E.D.1985). Plaintiffs' trespass claim fails because they did not establish an exclusive right to possession of the parking lane on Gravois. In fact, Plaintiffs concede that they have no greater claim to Gravois than any other member of the public. Therefore, Plaintiffs' trespass claim must fail. Accordingly, the trial court did not err in granting summary judgment in favor of QuikTrip on Plaintiffs' trespass claim. Point three is denied.

### III. CONCLUSION

Plaintiffs' first point on appeal, claiming the trial court erred in entering its order dismissing their negligent misrepresentation claim, is dismissed. The trial court's entry of summary judgment in favor of QuikTrip on Plaintiffs' claims for interference with an easement and trespass is affirmed.

KURT S. ODENWALD, P.J. and
PATRICIA L. COHEN, J., concur.

---

7. Our decision is in line with the reasoning of *Snyder v. State*, 92 Idaho 175, 438 P.2d 920 (1968). In *Snyder*, the owner of a veterinary hospital sued for the loss of his curb cut and parking lane on a public street after the State of Idaho transformed it into a lane of traffic. 438 P.2d at 922. Since neither the present property owner nor his predecessor had any vehicular access to the property, the Idaho Supreme Court found that he had not been deprived of any such access rights. *Id.* at 924. With that the court held, "it seems incongruous to yield to the demand for compensation by an individual when the regulation of traffic and parking, over which he admittedly has no control, somehow inconveniences him personally or has some effect upon the use of his property." *Id.*