**CITY OF GAINESVILLE, Missouri, a municipal corporation, Plaintiff–Respondent,**

v.

**MORRISON FERTILIZER, INC., a Missouri corporation, Defendant,**

**Lawrence A. Freeman and Mary C. Freeman, husband and wife, Russell Biby and Linda Biby, husband and wife, Defendants–Appellants,**

**and**

**Robert L. Merrell and Dot Aleene Merrell, husband and wife, Defendants.**

**No. 26194.**

Missouri Court of Appeals, Southern District, Division Two.

March 30, 2005.

---

Jacob Y. Garrett, West Plains, MO, for appellants Freeman and Biby.

John W. Bruffett, Ava, MO, respondent's attorney.

No brief filed by respondent City of Gainesville.

JEFFREY W. BATES, Chief Judge.

In April 1998, the City of Gainesville, Missouri ("City"), filed a petition to quiet title in the Circuit Court of Ozark County, Missouri. The defendants in the action were Morrison Fertilizer, Inc.; Robert and Dot Merrell; Lawrence and Mary Freeman; and Russell and Linda Biby. The petition requested that title to four parcels of real property adjoining the City's airport be quieted in the City. Defendants were alleged to be the record owners of the aforementioned pieces of property, which were individually identified by legal description in the petition. The City alleged that it had acquired ownership of each piece of property through adverse possession because it had openly, notoriously and adversely occupied and used these four tracts of land since 1951 as part of the municipal airport.

The case was tried in June 1999. At that time, all of the defendants were represented by the same attorney. Prior to the presentation of evidence, the defendants' attorney moved to dismiss the City's petition on the ground that quieting title to the disputed tracts of land in the City, through adverse possession, would be an unconstitutional "taking" without just compensation. This motion was the only mode by which this issue was raised at trial. Defendants did not file a counterclaim asking for payment of just compensation in the event the trial court ruled in favor of the City on its quiet title action. The trial court took the motion to dismiss under advisement with the case. In February 2004, the trial court entered an amended judgment denying the motion to dismiss and quieting title to all of the disputed tracts of land in the City.

The Freemans and Bibys (hereinafter collectively referred to as "Appellants") present one point for decision in their appeal. They contend the trial court erred by relying on adverse possession to quiet title in the City because that ruling violates art. I, § 26.[1] This section states, in pertinent part, that "private property shall not be taken or damaged for public use without just compensation."

In this court-tried case, our review is governed by Rule 84.13(d).[2] We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Lee v. Hiler,* 141 S.W.3d 517, 520 (Mo.App.2004).[3] We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregards all contrary evidence and inferences. *Arndt v. Beardsley,* 102 S.W.3d 572, 574 (Mo.App.2003). Since the trial court was not asked to provide findings of fact, all fact issues will be considered on appeal as having been found in accordance with the result reached. Rule 73.01(c); *Golden Delta Enter. v. City of Arnold,* 151 S.W.3d 119, 121–22 (Mo.App. 2004); *Coursen v. City of Sarcoxie,* 124 S.W.3d 492, 495 (Mo.App.2004).

We begin our analysis by noting that public entities in this state can ac-

---

1. All references to state constitutional provisions are to the Missouri Constitution of 1945, unless otherwise specified.

2. All references to rules are to the Missouri Court Rules (2004).

3. *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

quire title to real property by adverse possession. *See, e.g., Terry v. City of Independence,* 388 S.W.2d 769, 770–71 (Mo. 1965) (municipality); *Southern Reynolds County School Dist. v. Callahan,* 313 S.W.2d 35, 38 (Mo.1958) (school district); *Szombathy v. City of Berkeley,* 280 S.W.2d 834, 836 (Mo.1955) (municipality); *Basye v. Fayette R–III School Dist. Bd. of Educ.,* 150 S.W.3d 111, 116 (Mo.App.2004) (school district); *Rector v. Missouri Dep't of Natural Res.,* 685 S.W.2d 225, 227 (Mo.App. 1984) (state agency). "The elements necessary to establish title to property by adverse possession are: (1) the possession must be hostile and under claim of right; (2) possession must be actual; (3) possession must be open and notorious; (4) possession must be exclusive; and (5) possession must be continuous for the requisite period." *Lacy v. Schmitz,* 639 S.W.2d 96, 99 (Mo.App.1982). The required statutory period is ten years. § 516.010; *Rector,* 685 S.W.2d at 227.[4]

Based on the result reached below, the trial court found that the City proved each of the foregoing elements as to all four disputed parcels of land. Appellants have not challenged this ruling on appeal. Viewed in a light most favorable to the judgment, the City acquired title by adverse possession to the land formerly owned by Appellants many years prior to the institution of the City's quiet title action.[5]

■ Appellants base their assault on the judgment upon art. I, § 26. They argue that allowing a municipality to acquire ownership of land by adverse possession violates the constitutional prohibition against private property being "taken ... for public use without just compensation." We find this argument to be without merit.

■ We first address the issue of whether acquiring real estate for a municipal airport constitutes a "public use" of the property. We conclude that it does. While municipalities in this state do not possess an inherent right to exercise the power of eminent domain, this authority can be delegated to them by the legislature. *City of Kansas City v. Hon,* 972 S.W.2d 407, 410 (Mo.App.1998). Section 305.170 specifically authorizes a municipality to acquire property for the establishment, construction and operation of an airport. The acquisition of real property for a municipal airport is a public use. *Hon,* 972 S.W.2d at 414; § 305.190. Therefore, the dispositive question here is whether a municipality's acquisition of such property by adverse possession constitutes a constitutional taking of the property so as to require that just compensation be paid.

We find the answer to this question in *Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371 (1937). In *Barker,* the Supreme Court considered the constitutionality of a state statute which barred a landowner from claiming damages for the taking of his or her property for a public

**4.** All references to statutes are to RSMo (2000), unless otherwise specified.

**5.** Appellants question the City's ability to acquire title by adverse possession because § 516.090 prohibits a municipality from losing land by adverse possession. This argument was rejected long ago by the Supreme Court of Missouri in *Dudley v. Clark,* 255 Mo. 570, 164 S.W. 608 (1914). There, the court was interpreting § 1886 RSMo (1909), which is textually identical to § 516.090. The court

held that § 1886 was directed to preventing land acquired by a public, pious or charitable entity from being lost by limitation, "not to forbidding it gaining title by limitation." *Id.* at 613. *Dudley* is still controlling on this point of law. *See Basye v. Fayette R–III School Dist. Bd. of Educ.,* 150 S.W.3d 111, 116 (Mo.App.2004) (citing *Dudley* to support the court's holding that § 516.090 does not prevent public entities from gaining title to real property by adverse possession).

road or bridge unless the claim was filed within 20 days after the last day of publication of a notice describing the location of the road or bridge.[6] The court described the issue thusly: "[t]he constitutionality of that part of section 7840, R.S.1929, Mo.St. Ann. § 7840, p. 6740, permitting private property to be taken for public use, without just compensation, by nonaction (short of the general statute of limitations) of the owner, is the question." *Id.* at 372. The court cited with approval the following quotation from 2 Lewis, Eminent Domain (3rd ed.) § 966:

> Where the constitution either expressly, or as interpreted by the courts, requires compensation to be first made for property taken for public use, a law which casts the initiative upon the owner and requires him to prosecute his claim for compensation within a time limited or be barred, is invalid. Where under such a constitution property is appropriated to public use without complying therewith, the owner's right to compensation is not barred, except by adverse possession for the prescriptive period.

*Id.* at 374. In holding the 20–day time limit for filing claims allowed by § 7840 unconstitutional, the court was careful to distinguish a general statute of limitations from the much shorter time period being invalidated in *Barker:*

> What we say here has no effect on cases where a landowner, by some affirmative action, waives his right to compensation or is barred by the general statute of limitation. In view of the very clear and mandatory directions of our Constitution on taking private property for public use, we do not think that the twenty days' provision in section 7840, R.S.1929 (Mo.St.Ann. § 7840, p. 6740), can be said

to be a statute of limitations in such sense as to bar a landowner who fails to file a claim within the time prescribed.

*Id.* at 377. Because the court overruled one of its prior decisions that had approved the 20–day time limit in § 7840, the court made its ruling prospective, except as to the plaintiff in *Barker.* In explaining why that was done, the court once again was careful to point out that the owner of private property would not be entitled to compensation if he lost title to his land due to adverse possession:

> We hold that the effect of the present decision, holding section 7840, R. S.1929 (Mo.St.Ann. § 7840, p. 6740), void in part, and overruling the Petet Case, in so far as it conflicts with our ruling here, shall be prospective only and not retroactive, except as to plaintiff. He has borne the burden of bringing about a result which will, in the future, give assurance to the property owner that his property cannot be taken for public use except by compliance with section 21, art. 2, of the Constitution, or by adverse possession for the prescriptive period.

*Id.* at 379. Thus, we interpret *Barker* to hold that a public entity's acquisition of private property for a public use by adverse possession extinguishes the former owner's constitutional right to receive just compensation.

The holding in *Barker* is consistent with those found in a number of cases from other states interpreting their own constitutional provisions that are identical, in all pertinent respects, to art. I, § 21. *See, e.g., Weidner v. Dep't of Transp. & Pub. Facilities,* 860 P.2d 1205, 1212 (Alaska 1993); *Commonwealth v. Stephens,* 407 S.W.2d 711, 712 (Ky.1966); *Stickney v.*

---

**6.** At that time, the constitutional prohibition against taking or damaging private property for public use without just compensation was found in art. II, § 21 of the Missouri Constitution of 1875.

*City of Saco,* 770 A.2d 592, 603 (Me.2001); *Rogers v. Marlin,* 754 So.2d 1267, 1273 (Miss.App.1999); *State ex rel. A.A.A. Inv. v. City of Columbus,* 17 Ohio St.3d 151, 478 N.E.2d 773, 774–75 (1985); *Reitsma v. Pascoag Reservoir & Dam, LLC,* 774 A.2d 826, 837–38 (R.I.2001); *Petersen v. Port of Seattle,* 94 Wash.2d 479, 618 P.2d 67, 70 (1980). The *Stephens* case from Kentucky contains a simple, yet cogent, explanation of the rationale underlying this principle of law:

> It was the view of the Chancellor that under sections 13 and 242 of our Constitution the state and other governmental units are prohibited from taking property without paying just compensation therefor, and to permit the acquisition of title by adverse possession would violate these provisions. This overlooks the fact that after the running of the statute of limitation, the original owner is no longer in a position to assert title to the property and it has effectively vested in the adverse possessor. Thus it may be said that since the original owner has lost his claim of title, the state is no longer taking his property.... It has been suggested that the owner is helpless to prevent encroachment on this property by the Commonwealth so as to stop the running of the limitation period against him.... However, the property owner does at least have a remedy in the form of a reverse condemnation proceeding against the state.... This remedy we deem sufficient to protect the landowner's rights.

*Stephens,* 407 S.W.2d at 712 (citations omitted).

We agree with the analysis in *Stephens* that a public entity is no longer "taking" private property after it acquires title by adverse possession. We also agree that an owner of private property in Missouri has an adequate remedy, in the form of a timely-filed inverse condemnation action, if his or her property is taken by a public entity without payment of just compensation.

 An action for inverse condemnation lies if a public entity with condemning authority does not actually condemn a parcel of property, but nevertheless appropriates the property for public use. *See State ex rel. State Hwy. Comm'n v. Swink,* 537 S.W.2d 556, 558 (Mo. banc 1976); *see also Missouri Real Estate & Ins. Agency, Inc. v. St. Louis County,* 959 S.W.2d 847, 849 (Mo.App.1997) (inverse condemnation is a cause of action against a governmental agency to recover the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed); *L & T Inv. Corp. v. State, ex rel. Missouri Hwy. and Transp. Comm.,* 927 S.W.2d 509, 510 (Mo.App. 1996) (same holding). The statute of limitations for bringing an inverse condemnation action is ten years, which is the same as the period of limitations for acquiring title to property by adverse possession. *See Shade v. Missouri Hwy. and Trans. Comm'n,* 69 S.W.3d 503, 513 (Mo.App. 2001). Thus, the failure of a public entity to initiate a condemnation proceeding does not leave a private property owner without a remedy. An owner can receive the just compensation guaranteed by art. I, § 26 by filing an action for inverse condemnation before the expiration of the ten-year statute of limitations for adverse possession established by § 516.010.

In the case at bar, Appellants did not commence an action for inverse condemnation before the ten-year statute of limitations expired. Therefore, they lost title to their land by adverse possession. Once that occurred, their right to receive just compensation pursuant to art. I, § 26 was extinguished. Accordingly, the trial court properly denied the motion to dismiss the

City's quiet title action. The judgment of the trial court is affirmed.

PARRISH, P.J., and SHRUM, J., concur.